UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA     PLAINTIFF

v.     No. 5:23-cr-45-BJB

JAMES E. WHITE     DEFENDANT

### MEMORANDUM OPINION AND ORDER

    Seeking evidence of drug trafficking, based on an interview with a confidential informant, detectives from the McCracken County Sheriff's Office sought and executed a search warrant at James White's house. *See* Warrant Affidavit (DN 35-1) at 9. The United States charged White with various gun and drug crimes based on that search, Indictment (DN 1) at 1–2, and now White seeks to suppress that evidence (never saying exactly what the evidence is). He attacks the affidavit supporting the search warrant and seeks a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The affiant whose report supported the warrant application, White contends, unreasonably relied on information from an unreliable and previously unknown confidential informant.[1]

    White's initial motion took issue with four statements in the warrant affidavit. *See* Motion to Suppress (DN 29) at 2–3. But as his Reply brief makes clear—and as he conceded during the hearing on this motion—his only real challenge is to the confidential informant's reliability. Reply (DN 34); Hearing Tr. (DN 36) at 5:14–17. That challenge, even before its refinement, arrived more than four months after the Court's deadline for such motions. *Compare* DN 24 ("The Defendant shall file any motion to suppress by 6/14/24."), *with* DN 29 (filed 10/29/24). That's reason enough to deny it. *See* FED. R. CRIM. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."). To be sure, a judge still "may consider" the motion "if the party shows good cause." *Id.*; *United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010). But White's reason for delay doesn't meet that standard.

    With admirable candor, White's lawyer explained that he initially didn't believe a suppression motion was worth pursuing. Hearing Tr. at 3:11–13. But White's advocacy brought him around, persuading counsel that he had a good-faith basis for this motion. *Id.* at 3:23–4:1 (counsel describing the "back-and-forth"

---

[1] White conceded that the face of the affidavit established probable cause assuming the informant was sufficiently credible. Hearing Tr. (DN 36) at 5:23–6:6.

1

between himself and White about "why this case would apply or this precedent would not be applicable"). Counsel's commitment to his professional obligations, *cf.* FED. R. CIV. P. 11(b), and industriousness on behalf of his client, *cf.* KY. S. CT. R. 3.130(1.3) ("A lawyer shall act with reasonable diligence and promptness in representing a client."), are admirable. But the decision not to file initially was ultimately a "conscious" one of the sort the Sixth Circuit has said "will not … establish good cause." *Walden*, 625 F.3d at 965 (collecting cases). So the Court denies the motion as untimely.

The motion would fail on its merits in any event. *Franks v. Delaware*—which sprung from the Fourth Amendment during the 1970s—allows a defendant to seek suppression of evidence based on a "knowing or reckless falsity" contained in the affidavit that led to its discovery. *United States v. Sanders*, 106 F.4th 455, 470–71 (6th Cir. 2024) (en banc). An affidavit's "reckless falsity" can include "reckless disregard for the truth" of the testimony of an informant the affiant relied on. *United States v. Fowler*, 535 F.3d 408, 415–16 (6th Cir. 2008); *United States v. Caldwell*, 114 F. App'x 178, 182 (6th Cir. 2004).

"*Franks* set forth a regimented process for establishing" the falsehood of a warrant affidavit. *Sanders*, 106 F.4th at 470–71. First, a defendant must make a "substantial preliminary showing" that the affiant unreasonably relied on an unreliable informant. *See id.* at 471 (citing *Franks*, 438 U.S. at 155–56). Then he must show that "the affidavit would not have established probable cause without" the affiant's testimony. *See id.* (citing *Franks*, 438 U.S. at 171–72). Only once he's met those initial burdens would the Court hold an evidentiary hearing—and then only suppress the resulting evidence if the defendant further supports his allegations by a preponderance. *Id.* In the Sixth Circuit's plyometric terms, this task is "tall" and the defendant's burden is "heavy." *Id.* (citing *Franks*, 438 U.S. at 171, and quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). After all, "warrant affidavits have a 'presumption of validity.'" *Id.* (citing *Franks*, 438 U.S. at 171).

White hasn't made the leap here.

An affiant who hasn't previously worked with an informant must "verify in some manner" the credibility of an informant's testimony before relying on it in a warrant application. *See United States v. Crawford*, 943 F.3d 297, 307 (6th Cir. 2019). That's because the informant has "no track record of credibility to fall back on." *Id.* at 306. In *Crawford*, for example, an Ohio officer received a tip (that a suspect was dealing drugs) from a confidential informant whom he'd never met. *Id.* at 302, 307. So the officer (appropriately) took and documented several steps to verify the informant's reliability. First, the informant provided "particular details" regarding the drug-trafficking operation, including the supplier's name. *Id.* at 307. Second, the informant "identified" the suspect "from his driver's license photo." *Id.* Third, the

informant supplied the suspect's "telephone number" and "show[ed]" the officer "text messages between" the informant and the defendant. *Id.* Finally, the officer "independently examined" the suspect's background, "discovering" the defendant's "criminal past, which included drug trafficking." *Id.* Based on these efforts, the Sixth Circuit concluded, the warrant affidavit "comfortably" demonstrated that the informant was reliable. *Id.*

The officer here took the same actions described in *Crawford*—and more. His affidavit noted that the informant provided details about White's trafficking operation, including that he hides drugs "in various places" on his property and that his "source of supply" is an individual who "goes by the street name of Gucci." Warrant Affidavit at 5. The informant identified White from a photograph, provided White's cell-phone number, and displayed messages between the informant and White. *Id.* at 4–5. And the officer independently investigated White's criminal past, which included multiple drug-trafficking convictions. *Id.* These corroboration efforts—which neatly track those blessed in *Crawford*—sufficiently established the informant's reliability.

True, the officer in *Crawford* also confirmed the informant's reliability with "other officers" who'd previously used him as an informant. *Crawford*, 943 F.3d at 307. But the affiant here took an additional step of his own: he traveled with the informant to White's residence and verified details about the residence and White's vehicle—steps the officer clearly described under oath. Warrant Affidavit at 5. And the informant (whose identity and drug use were known to police) had skin in the game, too: she could've been subject to prosecution had she provided false information. Hearing Tr. at 14:15–19. So her information is "entitled to far greater weight" than that of an anonymous tipster. *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005). Finally, in the course of discussing White's drug trafficking, the informant made several statements against her own penal interest, Warrant Affidavit at 3, which likewise "lend credibility to [her] contemporaneous accusations," *United States v. Harris*, 403 U.S. 573, 583–84 (1971).

Given all these details and their corroboration, the Court has little trouble concluding that the informant was sufficiently reliable that the affiant wasn't "knowingly and recklessly false" in including information from her in the affidavit. Rather, the record shows the affiant reasonably relied on her statements to support the warrant application. So White has failed (at step one) to make a "substantial preliminary showing" of falsehood sufficient to justify an evidentiary hearing and potential suppression. *Franks*, 438 U.S. at 155–56.

White's counterargument focuses on additional details he says the warrant affidavit *didn't* include. The officer allegedly failed to disclose that the informant initially told a lie about her keys—and then cooperated with police only after being

3

arrested. Reply at 2–3, 7; Hearing Tr. at 7:14–25. And the affiant purportedly "did not apprise the issuing magistrate [of] any information about" dubious statements the informant had made about the price she paid White for methamphetamine.² Reply at 6. According to White, this information should've "tipped off" the affiant to her unreliability. *Id.* at 6–7. In omitting these details, White argues, the affiant "intentionally misled the magistrate" regarding the informant's reliability. *Fowler*, 535 F.3d at 416.

This argument, raised for the first time in the Reply, comes too late. *United States v. Haqq*, No. 3:17-cr-119, 2018 WL 4635034, at *7 (W.D. Ky. Sept. 27, 2018) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Even if it

---

² The "additional background facts" section of White's verified reply brief offers his own characterization of the two questionable statements that purportedly undermine the informant's credibility. Reply at 1–3. The Court construes this as an "affidavit." *Franks*, 438 U.S. at 171.

On White's telling, the informant was present while police executed a warrant on a third party not before the Court. Reply at 1. According to White's "information and belief," *id.*, the informant then began answering officers' questions. When the informant initially told police that her keys were locked in her car, officers apparently left her alone. But later, when officers executed a *second* warrant at a *different* location, they found a bag with the informant's name on it. That bag, according to White, contained the informant's car keys (as well as some methamphetamine)—presumably the same keys the informant allegedly told officers were locked in her car. *Id.* at 1–2.

Separately, White argues that the informant told police she'd bought methamphetamine from White at a price of $700 for 18 grams. *Id.* at 2. This price, according to White, is so exorbitant that no reasonable officer could have believed it.

White apparently discovered this information during discovery in separate state proceedings. *Id.* at 1 n.1. And, according to White, the informant's untruths about her keys and methamphetamine pricing should've tipped officers off that she might lie about other things. This argument fails for several reasons. *First*, White's briefing doesn't indicate whether the affiant was one of the detectives who heard the informant's allegedly false statements about her keys. (None of the statements that White targets appears in the warrant affidavit.) If not, it's hard to see how the affiant should have known about earlier false statements made to a different group of officers. *Second*, even assuming the informant's earlier statements should have tipped off police to her unreliability, and further assuming that the affiant here knew about those statements, "deficiencies in an informant's tip may be cured by independent corroboration contained in the tip by investigating officers." *United States v. Craemer*, 555 F.2d 594, 596–97 (6th Cir. 1977). As discussed above and during the hearing, the affiant corroborated many of the informant's statements sufficiently to establish her credibility. *Finally*, White has offered no evidence beyond his self-serving affidavit regarding the common street value of methamphetamine. Put differently, White has given the Court no basis to conclude that—even if he's right about the price the informant quoted— the price was so unbelievable that it rendered the rest of the informant's testimony unbelievable as well.

4

were timely, it wouldn't persuade. Many and perhaps most informants who work with police have an incentive to seek leniency. That doesn't necessarily discount their information; in fact, courts have held it sometimes makes an informant *more* rather than less trustworthy. *See, e.g., United States v. Hansmeier*, 867 F.3d 807, 812 (7th Cir. 2017) ("Walker's recent arrest gave him an incentive to supply the police with accurate information in hopes of receiving lenient punishment for his crimes."); *Harris v. O'Hare*, 770 F.3d 224, 233 (2d Cir. 2014). Because this informant was in custody, moreover, she faced negative as well as positive incentives: police could've held any false statements against her. Finally, that an informant might've made false statements in the past (while seeking to avoid detection rather than seeking to cooperate) doesn't mean future statements are categorically unreliable. Rather, an officer might simply corroborate the informant's statements more thoroughly—as this one did before submitting his affidavit.

More fundamentally, as White's counsel emphasized at the motion hearing, this argument focuses on "material omission[s]" from the affidavit, not affirmative falsehoods. Hearing Tr. at 17:2. That argument is a challenging one, as the Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Fowler*, 535 F.3d at 415–16 (collecting cases). In addition, "[a] warrant affidavit need not … spell out background information about an informant." *Sanders*, 106 F.4th at 464. As discussed above, White doesn't contest that the affiant took multiple steps to verify the informant's reliability, all of which he documented on the warrant affidavit. No legal rule known to this Court—whether from the Fourth Amendment, *Franks*, or elsewhere—required the officer to provide more. *See id.* ("At day's end, we assess what the affidavit said about the informant's tip, not what it did not.").

## ORDER

The Court denies White's request for a *Franks* hearing (DN 29).